Before we get started, I just want to express our appreciation for District Court Judge Chun coming to help us with our docket and join us here at the Federal Circuit to hear these cases. We're really grateful that you're here. Okay, now our first case for argument is 24-1343, Crisafulli v. Collins. Mr. DeHakis? Thank you, Your Honor. May it please the Court. On behalf of Mr. Crisafulli, I want to thank this Court for the opportunity to present his appeal. Mr. Crisafulli is a prevailing party because the Veterans Court remanded his claim for hearing loss so that the Board can consider record evidence that he argued suggested his tinnitus was a component of that hearing loss. As explained in the opening brief, Kelly v. Nicholson controls. In Kelly, the Veterans Court remanded because it found that his claim was never limited to a single diagnosis and permitted the appellant on remand to ask the Board to address a different diagnosis. But one difference here is the Veterans Court indicated that it was uncertain as to whether all of his claims were addressed and that he might have, is it tinnitus? How do you say that? I think both are permissible, Your Honor. I say tinnitus. Okay, I'm going tinnitus. So in any event, they weren't sure if it's possible he had implicitly raised a claim for tinnitus, and so they sent it back. So how is it error? Because the lower court could have concluded that no, he did, or the Board could have concluded that no, he did not do an adequate job of alerting us to the possible claim for tinnitus, in which case there wouldn't have been, the remand wouldn't have been a proper thing to do, right? Right, Your Honor. So the reason why this is error is because the foundation of the argument was that this evidence was before the Board, and keep in mind that the Board remanded specifically for this examination, the examination disclosed the tinnitus, and then the Board didn't comment on the tinnitus. And so the foundation of the error is that the record evidence suggested this connection, and whether it's reasonably raised or not is kind of a secondary issue. But the error, as in Kelly v. Nicholson, was that the Board was required to review all of the record evidence. Well, I thought in Kelly there was a change in law. Wasn't there a change in law in Kelly? There wasn't. And that change in law was what necessitated the remand, so that seems like a very different case. Not exactly, Your Honor. There was a change in law, but the ruling of the court says, they talked about the VCA change, but the ultimate conclusion of this court was that the VA was obligated to consider all evidence of record before deciding whether his claim was well-grounded, and that formed the basis of the remand order, or at least that's what this court determined formed the basis of the remand order and not the change in law. And so they found that the remand was predicated upon the Board's failure to review all of the evidence, which is essentially what happened here. But the CAVC wasn't sure that they had failed to review all of the evidence, because they indicated expressly in their decision they were not finding this as an error, and they were not deciding that he had raised it. They wanted to send it back for the Board to think about. So what if the Board said he had not properly raised it, that there was not sufficient information in the file to conclude that there was a separate claim for tinnitus? What if that had been the result? Would you still be arguing that the CAVC's decision to remand for that consideration was a victory for your client under those circumstances? Your Honor, are you asking before this appeal or after the remand if the Board found it was not reasonably raised? I am saying we have a CAVC decision that sends it back for consideration of whether something was reasonably raised. You're saying we should get attorney's fees for that, for that CAVC decision. Now if, when they sent it back with the exact same language of this decision, if the Board had concluded the tinnitus claim was not reasonably raised, do you still think you should get attorney's fees for the CAVC decision that sent it back for that consideration? Absolutely, Your Honor, because the precedent establishes that it's prevailing party at the court, and what happens after remand is irrelevant, whether they win or lose on remand is irrelevant. The prevailing party determination is looking at what happened at the court and not what happened after the remand. That's very troubling to me because there are times when we get cases where we find the opinion from the lower tribunal to be less than fully complete, such that we're a little nervous and we can't make fact findings in the first instance, and so we send those kinds of things back for further information. Are you saying that's a victory for which EJIA fees would be awarded because we need more information from the decision maker than what they provided in the decision? I think the distinguishing aspect of those, Your Honor, is the law distinguishes between a case where, like here, where the Veterans Court does not retain jurisdiction, and one where the court does retain jurisdiction. In your example where this court were to send something back, I'm assuming it means that it comes back to this court and then you apply those laws, then because this court . . . That's a rare thing that we remand but retain jurisdiction. Right, Your Honor. But the case law does distinguish between the situation where the court retains jurisdiction and then the veteran loses at the agency. In that case, there is no prevailing party because at the veterans, it comes back to the Veterans Court, and so the veteran would then lose on the merits. But where the action at the court is done, they do not retain jurisdiction, it goes back to the agency, then that's when we stop looking at what happened and determining whether there was a prevailing party or not. So does your point about the irrelevance of what happens after the remand mean that even though your client has now prevailed on getting some of the benefits that you cannot now get the fees for the appeal that resulted in the, was it February 2023 Veterans Court ruling? That that's history and you can't get those now simply because you actually have prevailed on the tinnitus claim? If I understand your question, Your Honor, correct. The outcome at the board after the remand has no bearing on whether each of these are available in his appeal at the Veterans Court. So it's, the law looks only at what was the order of the Veterans Court. Right. So I think you're going to give the same answer, I just want to be clear. So you've gotten an award of benefits at VA. Suppose you think, well, it was 10%, it should have been 20% and then you bring it up and you end up back in the Veterans Court and you get your 20%. Do you get fees and let's again, are you a prevailing party at that point for purposes of what I'm going to call, in my hypothetical, the second visit to the Veterans Court only or can you look back and get to be called a prevailing party in the first Veterans Court appearance because that was actually a necessary step in your getting to where you are with a true prevailing? I think I understand your question, Your Honor. In my review of the case law, I'm not aware of that specific fact occurring. I think that the way that the law is written, the statutes written and the way that the case law treats it is that we look at each proceeding independent of anything else that has happened. Obviously, if there's additional appeals to higher courts, that would play a role. But in your question, Your Honor, the second appeal would entitle the veteran to EJF fees for the work performed in that appeal only, assuming, of course, it's a prevailing party and in your scenario, there was an award of additional benefits. But that second proceeding would not have any bearing on this proceeding. This proceeding looks only at... So getting back then to the discussion of this proceeding, does your argument depend on our essentially looking behind what the Veterans Court said it was doing and concluding it was really doing more than it said? It does, Your Honor. And that's what the case law supports, is that this court reviews prevailing party de novo and it looks essentially at what was the predicate of the error, notwithstanding what the Veterans Court said it was, and particularly in Kelly, they said it was not and this court found that it was a prevailing party. I'm glad you turned to the issue of the legal standard. The general question is whether the Veterans Court applied the correct legal standard and on that issue, I noticed that your briefing doesn't discuss Winters or the Robinson versus O'Rourke cases and a question I had for you is, do you agree that those cases apply here? We do not, Your Honor. Those two cases are distinguishable and I'll explain here. So I'll start with the easy one, I think, in Winters. Winters said that there was no prevailing party because there was no error at all. This court said that there was, quoting here, Winters has not identified a timing or other requirement that the VA allegedly violated by not having provided notice under Ratliff prior to the Veterans Court. So there was nothing for the board to have done. That remand order was specifically because there was a prior proceeding that was still pending that would have affected the second proceeding and so they sent that one back. But did those cases at least articulate the correct legal standard to apply? They did, Your Honor. So yes, they do articulate the correct legal standard, but I think those, to the extent that those cases describe the legal standard, then yes, that legal standard would apply, but they were simply just announcing what was already settled law on the issue. And didn't the Veterans Court purport to apply Winters? They cited to Winters in support, but the way I read the Veterans Court decision is they leaned heavily on Blue v. Wilkie, which is their own precedent, and then they cited to some of the precedent from this court as additional authority, but really they seem to have leaned most heavily on Blue v. Wilkie as I understood their decision. In Robinson, I will admit Robinson was a little tricky for me, but as far as I can read it, Robinson is distinguished for me because the appellant in that case raised a legal issue that was not presented to the board, and this court said that it was not legal error for the board not to have considered a legal argument never made. And quoting, in other words, the remand required the board to consider an argument, legal argument, that it could not have considered through no fault of its own. But this case, like Kelly, is to consider evidence that was before the board that the board actually asked for, ordered development of, and was silent on the tinnitus diagnosis. And just like in Kelly, where there was additional medical evidence which showed a different diagnosis, the error was in failing to review the entire record under 5107. Can I, is the following a fair characterization of the distinction you just made, that it is enough, I'm sorry, that it is not enough if the Veterans Court remands where it is clear that there was no error, covering in your view, I think, both of the two cases you just talked about, and that your position may be as long as the remand was to figure out whether there was an error, it's, you're still a prevailing party even though the Veterans Court has not in itself determined that there was an error. As long as there was a possibility that the board committed error in coming, before coming to the Veterans Court. I would add to that, Your Honor, the requirement that as Kelly, as Kelly, and really that I think Davis recognizes, that this has to be prompted in some way upon the argument by the veteran. So if the veteran never mentions it, and the Veterans Court's to respond to it, or it, as in some, as in Winters. Right, but we have that, right? I mean, mentioned it, you mean in the Veterans Court or in the board? The veteran, the appellant, has to have presented this argument to the court, and as I read the case law, the error is predicated upon the argument, which shows that the board in some way made an error. And that's what Kelly says, and that's what happened here. The appellant argued that the evidence showing tinnitus was not considered, whether or not it establishes a reasonably raised claim or entitlement. But do you think that this standard I was just articulating is actually the standard in our cases, or would require an alteration of what we said? Because I thought our cases say a remand in order to qualify the veteran as a prevailing party must, in fact, be predicated on the Veterans Court's own determination, explicit or implicit, that there was an error, not, there may be an error, we're going to send it back to the board to tell us that. I think, Your Honor, the best way I can answer that question is to say that it really does depend on what was argued, and what was the obligations of the board in relation to that  And so, to determine whether there is an error or not, by itself, I would agree is normally not sufficient, but when the veteran or the appellant raises an issue, and the remand order follows up on that as it did here, then it would be prevailing party. Thank you. Okay, counsel. Thank you, Your Honor. I'll restore some of your rebuttal time. Let's hear from Ms. Auburn. How do I say your last name? Did I say that right? Auburn? Auburn, yes. Auburn. Thank you, Your Honor. Good morning. May it please the Court. The Veterans Court correctly determined that Mr. Crisofulli was not a prevailing party within the meaning of the Aegis statute, precisely because the remand wasn't predicated on administrative error. And the Veterans Court reached this determination, as Your Honors have just discussed, by following this Court's well-established standard on that point. Although Mr. Crisofulli is framing his appeal as a legal question, as an initial matter, I think it's important to discuss the fact that this Court doesn't have jurisdiction to review what's really being discussed, which is an application of the Aegis statute to the facts. No alternative standard has been put forward, and I don't think that the standard is really in question. What was the case that your colleague on the other side mentioned where I think he said the Veterans Court said, we weren't doing X, but this Court said, oh, yes, you were? I believe that was the Kelly case, Your Honor. Kelly case. So was that also an application question? We seem to have decided. The Kelly case discussed, so there in the Kelly case, as my colleague discussed, the extent to which the Board decision had disregarded evidence on the record of a second diagnosis to support the Veterans claim in that case. And even though the Veterans Court said, explained that its remand had not been predicated on error, this Court found that because there was error in the record, that it was in fact, or rather there was evidence on the record that that was an implicit error and remanded for reconsideration in light of that decision. It's the Secretary's position that that is not the case here because this question of tinnitus is not clear from the record in the way that Mr. Chris Foley has argued both here today and in the briefs. And the standard is clear that we obviously first start by looking at what the Veterans Court characterized its remand as, and here it was not predicated on error, but that the secondary question, of course, is whether it's implied. But I guess I don't understand how it's not implied, despite their discounting of the fact that they were finding administrative error. I mean, if you send it back and say, hey, it looks like there might be an unadjudicated claim here, how is that not an implicit finding of error, especially when it turns out later the board agrees, yes, there was an unadjudicated claim? Yes. How is that not error? It's not error because... I mean, it is error. Well, so I suppose... It is. Actually, technically, it's an error. Like, technically, there was an error. The board admitted an error because they found that they had an unadjudicated claim. There was implicitly raised claim in the medical examiner's identification of tinnitus, which the board had in front of it. And we all know that the veteran doesn't have to raise a claim for it to be implicitly raised. It suffices if the medical records that the VA has demonstrates a disability, right? Absolutely, Your Honor. And I think the question here is really whether that was resolved at the point that the Veterans Court was considering the arguments made by Mr. Crisofulli on his appeal from the board determination. And the Veterans Court had a question about whether it had been properly raised. So this is merely for the purposes of EJIA fees, whether he's a prevailing party or not. It doesn't speak to whether, ultimately, a tinnitus claim had properly been raised. But at the point that we are in this sort of timeline, that question had not yet been  And, you know, there's Veterans Court case law that makes clear that simply raising a claim for hearing loss doesn't, as a matter of law, bring tinnitus into the picture. It doesn't raise a claim for that. No, but the medical records expressly said tinnitus. The medical examination record that the board actually ordered, the VA writing officer ordered that there should be this medical exam, that record says tinnitus on its face. Right? It mentions tinnitus. I don't think that. So then the question is whether that amounts to a claim for tinnitus when it's a distinct disability from hearing loss. I'm confused. I thought that a claim is implicitly made any time the medical record evidence gives reason to demonstrate that the Veteran has a potential disability. Am I misunderstanding the nature of the implicit claim case law? You know, I guess I'll say no, but I think more importantly in this context, what matters is when the Veterans Court was reviewing the appeal from the board, whether it was, whether the Veterans Court had enough information to say, okay, a claim for hearing, a claim for tinnitus has been raised or not. Because it decided that it hadn't, it was appropriate to remand. What basis could there be given this set of facts for the failure to identify that tinnitus claim? What good faith basis? Like you're saying the Veterans Court was uncertain and that was the way they wrote the opinion. Yes. But I'm saying, how could they be uncertain? The facts of this case are overt. There are times, by the way, when I get cases and somebody wants me to make a fact finding that seems indisputably correct, but I really think the lower tribunal should make it in the first instance. So even though I'm completely convinced an error has been made and a fact finding should be rendered in this favor, I nonetheless send it back and let the lower tribunal do it in the first instance. Absolutely. But I'm, in those cases, often completely 100% convinced an error has been made. So just saying, well, I'm not going to conclude an error has been made here, but hey, go take a look at this. It feels like something I'm kind of familiar with. And that usually means I think an error has been made, right? Even though I am not calling it an error on its face. So why wouldn't that suffice? So I guess I would say that if Mr. Christopher Lee viewed that as an error, the board's decision to remand as an error, then the proper remedy would have been to appeal that remand decision. And here we're sort of beyond that. I don't understand. No. We're talking about whether the CAVC recognized an error in the board's failure to address the tinnitus claim.   Absolutely. We are. And so the CAVC, I'm saying to you, what, you tell me on the facts of this case, what reasonable basis the CAVC could have for being confused about whether a tinnitus claim had been raised, given that it is expressly referenced in the medical records, and we both agree that that reasonably raises a claim. Absolutely. So the initial claim was for hearing loss, and that was what Mr. Christopher Lee appealed. That process began in 2015. I think at that time he even expressly disclaimed having tinnitus. It wasn't until 2020 on remand with a request for further medical records that tinnitus first surfaced. And it was as a diagnosis in his file. The government doesn't dispute that, but it did not, it didn't rise to the level of making a new claim for tinnitus. And so it's not error. Who says it didn't rise to the level? I mean, the board has concluded it did, right? The board has concluded it did rise to the level. It has since concluded it did, and that later conclusion on the remand that we've been discussing doesn't weigh into what this court is required to consider for purposes of a prevailing party assessment under the AEGIS statute, and I guess that's sort of bifurcation. What case law do you have that tells me I absolutely can't consider the fact that the Veterans Court said there might be an error here, so I'm going to send it back, and the board said, oh yeah, there's an error here? In what universe can I not consider the board agreeing that not just might there have been an error, there actually was an error in deciding whether the first decision amounted to recognition of an error? I think that's the Motorola case, which separates EJIA case analyses when the remanding court retains jurisdiction versus when it doesn't. So had the Veterans Court retained jurisdiction rather than remanding and vacating the board's decision, then that later success on the merits would have factored into the Veterans Court's assessment of whether there was a prevailing party finding. Why does the Veterans Court have to retain jurisdiction? Only because that's the way, that's, my understanding is that's the way that the Motorola court determined a different way of assessing these cases, depending on whether jurisdiction is retained or not. So in the absence of retaining that jurisdiction, the universe sort of closes at the remand. This 2003 Motorola case, show me where in it you think it indicates the board had to retain jurisdiction for there to be the possibility of treating the earlier material as resulting in clarity on the later CAVC decision. I see that they mentioned there was a retention of jurisdiction during remand, but what I don't see is something that indicates that only if there's a retention of jurisdiction during remand will this apply. And that may be in that case, Your Honor. I don't have, you know, I can't call up in this moment something that says that that's precisely how it's been, you know, that case resolved this question, but I do think that subsequently this circuit has made clear that absent a retention of jurisdiction, all that matters is that the plaintiff, that the EJ applicant prevail on their civil claim. Where did we make that clear? And you said subsequent to Motorola, we've made, this circuit has made it clear. That's what you just said. So where did we make that clear? I believe that that question came up in the Robinson case, for example, in 2018, and I'll apologize preemptively for not having a pin site for that precise, that precise notion, but I'm confident that it's reflected there. Can I just get you back to, let's put aside what the board said in what, late 2023, when it got the case back, and just thinking about what was in front of the Veterans Court leading up to the, was it February 2023 decision. Do you agree that there is a category of case? Maybe Kelly is one where the standard, where we can look at what the Veterans Court said and say implicitly there was a determination of error, even though it was kind of disclaimed. I agree that you can, Your Honor, and I think I'd agree with Mr. Foley's counsel in this regard, in that what matters is some combination of what the veteran was arguing, what the appellant was arguing, and what the board, the extent to which the Veterans Court adopted that argument, and I think the Kelly case is a good example, as is this court's case in Louisville, which we filed a 28-J letter on a couple weeks ago, where some combination of the merits argument that the veteran was making, the appellant was making, and the Veterans Court's adoption or sort of concern about that prompted the remand, and that needn't be precisely explicit, but I think in this case, neither Mr. Christopher's argument nor the Secretary's argument was adopted. The Veterans Court very clearly said, you know, we don't know, there is this question, this fact question of whether tinnitus was reasonably raised by the record, and rather than improperly undertaking that fact-finding exercise ourself, we're going to send it back on to the board, who then later concluded that it had been reasonably raised. So is it relevant to us, I mean, for us to ask what exactly was the uncertainty at the time under the implicit claim standard about whether a tinnitus claim was implicitly raised to the board by the medical records, and if we didn't, if we don't see how that could fail to be true, why do we not, why should we not conclude that, of course, it was sufficiently raised in the medical record for the board to have to adjudicate it, and so there's just no real-world gap between, there's nothing left to be uncertain about, again, putting aside what the board later said. So if I'm understanding Your Honor's question correctly, it's whether this Court has an obligation to ask, perhaps, could you reiterate, restate your question that way, I'm answering it more precisely. Right. So you have a discussion with the Chief about how could it conceivably not be true that this medical record raised this claim under the implicit claim doctrine, and I want you to, I guess, answer that question, putting aside the fact that the board later concluded that, of course, it did. So what is the possible argument against the conclusion that that medical record raised this claim? I think it's appropriate for the Veterans Court to ask the question of whether there was some error, even if it was not explicitly articulated in the Veterans Court's earlier decision to remand, and that is what the Veterans Court did here in its February 2023 decision. I think it said something to the effect of, right, the board's silence, this is on Appendix Page 4, the board's silence as to the tinnitus issue was not clear error and certainly not glaring error, as Mr. Crisofulli asserts. Right. But just, I guess, getting down to the as-applied, why was it not glaring error? Right. So two parts to that answer. The first is, and I think this is referenced, yes, in the Blue v. Wilkie case and a couple of others, that raising the claim for hearing loss as a matter of law does not have the effect of raising a claim for tinnitus. Yes, but that's, we already discussed that's not true when tinnitus is expressly identified in the medical record. So as a step, so then if a claim, I guess the distinction I would make is whether a claim for tinnitus has been properly raised by the record, and here it's not unreasonable for the board to have concluded it wasn't, given that it was...  Given that. This next part is the part that I care about. Everything you said before that is just talk.  Given that there was nearly a diagnosis for tinnitus well after that initial claim had been made, the notice of disagreement didn't address, didn't claim that tinnitus had not been properly adjudicated. It wasn't until, it wasn't until this appeal... So you're saying, wait, wait, but this is a problem for me, because now you're saying that the standard isn't whether it's reasonably raised by the record. The standard is we shouldn't conclude it's reasonably raised by the record if the notice of disagreement doesn't point out that it wasn't adjudicated. That's not the standard. The standard for an implicit claim is if it's reasonably raised by the record. So you've got to give me a reason it's not reasonably raised by the record, because the notice of agreement or failure to identify it there doesn't cause waiver of an implicitly raised claim. Agreed. So... I mean, is it something like you can note that there's tinnitus, but it's entirely possible the veteran could say, yeah, I get the ringing in my ear, but it's really not a problem for me, so I can't claim a disability about it? That might, yes, Your Honor. I think that that, on these facts, on this record, I mean, you know, at the risk of repeating what I've said already, I think that it's the way that the tinnitus, the tinnitus diagnosis was put on the record, didn't rise to the level of putting the veteran, the VA on notice that there was a claim for tinnitus to be adjudicated, and that's... Because I can imagine... Or there was a concern that it didn't. Obviously, I don't disagree that later the board found it was reasonably raised, but that sort of looking back with the clarity of the remand isn't what's critical or isn't what's instructive for the purposes of answering this prevailing party question for EJA, and I guess that's the bifurcation. Okay, any further questions? Can we go back to something you said at the very beginning of your presentation? You talked about application of the proper legal standard, or whether or not the veterans were to apply the proper legal standard, but then about how there isn't jurisdiction to review the actual application of it, the facts of the case. So, are you saying that that second part is all academic to the extent that's been discussed? The second part... The lack of jurisdiction. I see. I see. Well, so this is reflected in our brief as well. As an initial matter, it's the government's position that there's no jurisdiction to consider the application of the EJA statute to the facts of Mr. Christofulli's appeal of the veterans' denial of EJA fees. I wouldn't say that's academic. I'd say that that's the first... Those are the grounds on which we think it's appropriate for this court to not consider the appeal, but I welcome the discussion, of course, that we've had about his status as a prevailing party. So in your view, what's the precise question that we have to address? The precise question I think we have to address is affirming, I suppose, this court's standard that when a remand to an administrative agency is for the purposes of giving the veteran or giving the EJA applicant the chance to make arguments for the first time before the board, that that does not confer prevailing party status. And it's our position that this case tracks very well to the Davis case, the Robinson case, instances where this court has made that clear. Thank you. All right. Thank you very much. Thank you, Your Honor. We ask that the Veterans Court of Decision be affirmed. Mr. Vilhakis, we'll give you two minutes. One more follow-up. All right. The question that we need to ask is, what other reason was there for this remand? If not to ensure that the board reviewed the entire record, and if not to ensure the board adjudicated all claims that were raised by the record, there is simply no other reason for this remand order. This is not the case where we distinguished between Davis and Robinson and some of these others where there was a different basis for the remand order. The Veterans Court, although it claims to have not found error, in fact, sent this back to ensure that the board followed its statutes, followed its regulations to review the record and adjudicate any claims that were reasonably raised. In the Secretary's brief to the Veterans Court, not on the EJSU, but the merits that are in the February 2023 ruling, what, if anything, did the Secretary say about why there was at least uncertainty about whether a claim of disability based on tinnitus was reasonably raised in the medical record? I don't think our appendix has that brief. I can't say, Your Honor. I can tell you what the Veterans Court may have said in their decision. But their primary argument was that Mr. Cristofelli had failed to raise this issue, and so issue preclusion or issue exhaustion should apply. But again, regardless of the argument that the Secretary presents, Mr. Cristofelli presented the issue, said that the record raised it. The Veterans Court sent it back to determine that specific legal requirement. And as Chief Judge Moore pointed out, it was reasonably raised. It was granted. Yeah, but you told me to ignore all that. Well, now suddenly you want to embrace it. No, Your Honor. Well, I will say that. But the point is that the Veterans Court recognized that the board had the obligation, as in Kelly, to look at all the evidence and to adjudicate these claims. And just, if I may, one last point. The prevailing party is a legal determination that this court reviews de novo. And that's scattered throughout all of the cases that were cited in the briefing. So we would ask that the Veterans, or I'm sorry, we would ask that this court reverse the prevailing party determination and remand it back to it. Can I just ask on that, which is, you know, isn't it odd that for purposes of prevailing party, that the normal 72-92 distinction between legal questions and, I mean, interpretation of law, legal rulings, and underlying factual determinations or applications, that you think that's just thrown out the window for each of? It is, Your Honor, because this court's precedent says it's a legal determination. It does caveat that it cannot review facts. But here, this is not fact-finding. This is not application of law to fact. It's looking at what the Veterans Court did and determining whether prevailing party is present. This is, again, we keep going back to Kelly because we think that the situations in the two cases are very, very similar enough that this court certainly has the jurisdiction to reverse. Okay. Thank you, counsel. This case is, I thank both lawyers. The case is taken under submission.